IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
SENIOR JUDGE WALKER D. MILLER

Civil Action No. 09-cv-02546-WDM-KMT

JAMES J. WEIGEL,

    Plaintiff,

v.

BAC HOME LOANS SERVICING, LP, f/k/a COUNTRYWIDE HOME LOANS SERVICING LP,
DEUTSCHE BANK NATIONAL TRUST CO., as Trustee for the Vendee Mortgage Trust 2003-2, and
DEUTSCHE BANK NATIONAL TRUST CO., as Trustee for the Vendee Mortgage Trust 2008-1,

    Defendants.

## ORDER ON MOTION TO DISMISS

Miller, J.

This matter is before me on the Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 73) filed by Defendants BAC Home Loans Servicing LP ("BAC") and Deutsche Bank National Trust Co. ("Deutsche Bank"). Plaintiff opposes the motion. Defendants did not file a reply brief; since the time for such filing has expired, I consider briefing to be complete. After a review of the pleadings and the parties' written arguments, I conclude oral argument is not required. For the reasons that follow, the motion to dismiss will be denied.

## Background

This dispute arises out of failed real estate investments and the alleged conduct by Defendants in attempting to obtain payments. According to the Plaintiff's First Amended

Complaint (ECF No. 65), Plaintiff is a businessman with experience in banking, construction, real estate, and other ventures. In 2003, his real estate investment company, Avocet Investment Co., LLC ("Avocet"), invested with a man named John Burley. Pursuant to the arrangement between Plaintiff and Mr. Burley, Mr. Burley would locate properties for purchase while Plaintiff and/or his company would provide the capital. Mr. Burley (or one of his companies, collectively "Burley") would then lease the properties, collect the rents for the properties, and then use the rent to pay the mortgages. The investment properties were to be titled in the name of a limited liability company to be created by Burley and owned by both Burley and Avocet.

At issue in this litigation are six properties purchased pursuant to this arrangement by Burley, three in Indiana and three in Alabama. These properties were each acquired from the Department of Veterans Affairs ("VA"). In Alabama, two of the properties were transferred to Plaintiff's name but the third was incorrectly described on the deed and mortgage and so it is unclear whether Plaintiff has title. The Indiana properties were sold pursuant to installment contracts whereby the VA retained title to the properties until full payment was made. The loans on all properties were in Plaintiff's name.

The loans on the subject properties were eventually securitized and sold by the VA. In 2003, the three loans secured by the properties in Indiana were sold by the VA to what is known as the Vendee Mortgage Trust 2003-2. Deutsche Bank serves as the Trustee for this trust. At the time, Countrywide Home Loans, Inc., acted as the servicer for the Trustee. Similarly, in March 2008, the loans secured by the properties in Alabama were sold to what is known as the Vendee Mortgage Trust 2008-1; Deutsche Bank also serves as Trustee and Countrywide Home Loans, Inc., acted as the original servicer. According to the First

Amended Complaint, Countrywide Home Loans Servicing, LP, now BAC, became the servicer for all six of the loans in 2008.

Plaintiff alleges that as the economy began to decline in 2007-2008, Burley's payments became more sporadic and eventually stopped. Burley also failed to inform or account to Plaintiff of the status of the loans and properties. Plaintiff alleges that at least some of the loans were in default at the time the VA sold them to Deutsche Bank and at the time BAC became the servicer.

Bank of America bought Countrywide; shortly thereafter, Countrywide was charged by the attorneys' general of approximately fifteen states with predatory lending practices. In 2008, Bank of America settled the predatory lending charges, agreeing to modify up to 400,000 Countrywide loans. Bank of America then advertised extensively that it wanted to work with customers; these advertisements ran on television and on the Bank of America website. However, according to Plaintiff, Bank of America has not fulfilled its promises with respect to modifying the loans.[1]

BAC began contacting Plaintiff about payment on the property loans in early 2009. Plaintiff attempted to resolve the situation but BAC's representatives would only ask "how do you want to make payment?" Plaintiff alleges that between March and September 2009, he received hundreds of automated and live calls from BAC, all hours of the day, on both his home phone and mobile line. In April 2009, Plaintiff wrote to BAC requesting that it stop calling him and instead work with his attorney. However, the calls did not stop until Plaintiff

---

[1] It does not appear from the allegations that Plaintiff's loans were among those subject to the predatory lending settlement. Plaintiff's theory seems to be that Bank of America advertised broadly that it was willing to assist all borrowers, not only those from the Countrywide settlement.

filed the complaint in this lawsuit. Plaintiff continued to attempt to work out solutions with BAC, including attempting "short sales" (sales of the properties for less than the amounts owed on the loans) on two of the Indiana properties, but BAC did not respond and the sales did not go through. Plaintiff also alleges that documents for one of the Alabama properties indicates that the note was paid in full in 2004 and yet BAC continues to attempt to collect on the debt.

Plaintiff's First Amended Complaint asserts the following claims for relief: (1) violations of Fair Debt Collection Practices Act ("FDCPA") against BAC; (2) invasion of privacy against BAC and Deutsche Bank; (3) violation of the Colorado Consumer Protection Act ("CCPA") against BAC and Deutsche Bank; and (4) breach of implied contractual obligation of good faith and fair dealing against BAC and Deutsche Bank. Defendants seek dismissal of all of the claims.

## Standard of Review

A complaint must be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Factual allegations "must be enough to raise a right to relief above the speculative level." *Id.* at 555. The court must accept as true all well-pleaded facts and construe all reasonable allegations in the light most favorable to the plaintiff. *United States v. Colorado Supreme Court*, 87 F.3d 1161, 1164 (10th Cir. 1996).

## Discussion

I address at the outset an evidentiary issue raised by Defendants in support of their motion. Defendants ask that I take judicial notice of cancelled checks for mortgage

payments on the various properties and consider them as part of the motion to dismiss. Request for Judicial Notice in Support of Motion to Dismiss (ECF No. 74). They also request that I take judicial notice of a copy of the Request for Release of Documents dated March 11, 2004 and documents relating to one of the Alabama properties, the property on which the note was allegedly paid in full. Defendants argue that these documents are not subject to reasonable dispute and may be considered in my analysis of the motion to dismiss. Plaintiff opposes this request, arguing that the evidence is not properly the subject of judicial notice, is hearsay, is not properly authenticated, and was not disclosed to Plaintiff with Defendants' Rule 26(a)(1) disclosures.

With respect to the cancelled checks, I agree with Plaintiff that the documents provided by Defendants are not properly the subject of judicial notice. In general, the purpose of "judicial notice" is to permit a court to make a finding of fact in the absence of record evidence. *United States v. Boyd*, 289 F.3d 1254, 1258 (10th Cir. 2002) (citing FRE 201). Under FRE 201(b), a fact may be judicially noticed if it is one "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." "The effect of taking judicial notice under Rule 201 is to preclude a party from introducing contrary evidence and, in effect, directing a verdict against him as to the fact noticed." *General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1083 (7th Cir.1997) (citation omitted).

Here, Defendants provide record evidence and so the underlying purpose of Rule 201 is not applicable. Moreover, these documents are probative of a factual issue very much in dispute: which entity was servicing the loans at the time of the default. Under the

circumstances, I will not take judicial notice of any "facts" purportedly shown by the checks.

It appears that Defendants' goal is to have me consider this evidence without converting their motion to one for summary judgment under Rule 12(d). This is not appropriate; if Defendants wish to introduce evidence outside of the pleadings on a motion to dismiss then I must convert the motion and give Plaintiff reasonable opportunity to present evidence in rebuttal. Since Defendants appear to want to preserve their motion as one for dismissal, I decline to consider this extrinsic evidence and will not convert the motion to one for summary judgment.

In contrast, I will consider the documents relating to the March 11, 2004 Request for Release of Documents. Exh. 7 to Defendants' Mot., ECF No. 78. Plaintiff expressly refers to the Request for Release of Documents in Paragraph 18 of his First Amended Complaint and relies on it as grounds for his some of his claims. *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1385 (10th Cir. 1997) ("if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss"). Plaintiff does not dispute the authenticity of these documents and so I deem them to be incorporated in the pleadings. Therefore, I will analyze the motion to dismiss based on the allegations in the First Amended Complaint and the documents contained in the March 11, 2004 Request for Release of Documents.

I now turn to the substantive arguments presented by Defendants with respect to each of Plaintiff's claims.

1.     Invasion of Privacy

Defendants argue that the invasion of privacy claim fails because BAC had a legal right to seek payment on the loan and because its conduct, even as alleged in the First Amended Complaint, does not give rise to liability under this tort theory.

It appears to be undisputed that Plaintiff's invasion of privacy claim is premised on a claim that Defendants' actions amounted to an "unreasonable intrusion upon the seclusion of another." Restatement (Second) of Torts § 625B. This requires showing that (1) the defendant intentionally invaded the plaintiff's privacy; (2) the invasion would be very offensive to a reasonable person; (3) the plaintiff suffered injury; and (4) the invasion was the cause of the plaintiff's injuries. Colo. Jury Instr., Civil 28:1 (4th ed.) (2009).

Defendants argue that Plaintiff's allegations are insufficient to demonstrate the kind of unjustified, highly offensive conduct that can support this tort claim; they further argue that the allegations do not demonstrate that BAC's actions could foreseeably result in extreme mental anguish, embarrassment, humiliation or mental suffering and injury to Plaintiff. In response, Plaintiff cites legal authority supporting the notion that a plaintiff states a claim for invasion of privacy when a debt collector's conduct is "repeated with such persistence and frequency as to amount to a course of hounding." Restatement (Second) of Torts § 652B, cmt. d (1977). Moreover, under Colorado case law, the determination of whether the conduct is highly offensive is generally a question of fact. *Ozer v. Borquez*, 940 P.2d 371, 378 (Colo. 1997).

I agree with Plaintiff. Plaintiff alleges months of repeated harassing telephone calls despite requests to stop and a refusal to negotiate a resolution to the payment issues. Under the standard I must apply on a motion to dismiss, Plaintiff has alleged sufficient facts

to show conduct that is both offensive and capable of causing injury.

2.     Fair Debt Collection Practices Act

Defendants argue that Plaintiff's FDCPA claim fails because it is not a "debt collector" under the Act. 15 U.S.C. § 1692. The FDCPA prohibits certain practices by debt collectors; however, the definition of debt collector expressly does not include "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F)(iii). Defendants argue that despite the Plaintiff's allegation that at least some of the loans were in default at the time they were assigned to Deutsche Bank, the cancelled checks show that BAC began servicing the loans in 2003. As discussed above, I will not consider the extrinsic evidence of the checks and refer only to the allegations in the First Amended Complaint.[2] Plaintiff's allegations are sufficient to state a claim based on the status of BAC as a debt collector under the FDCPA.

3.     CCPA

Defendants seek dismissal of Plaintiff's CCPA claim, which is based on his assertion that BAC engaged in deceptive advertisements regarding its willingness to assist property owners in danger of default or foreclosure. Defendants argue that the claim fails because it had no obligation under the law to provide loss mitigation assistance to borrowers. Moreover, Defendants contend that Plaintiff cannot establish intent and cannot

---

[2]Even if I were to consider the checks, they do not resolve the factual dispute and do not do not unambiguously show that BAC was servicing the loans in 2003. The checks are generally payable to "Countrywide." It is unclear what entity actually received payment and which loans were in default at what time.

demonstrate a significant public impact from the disputed practice.

To prevail on a CCPA claim, a plaintiff must show: (1) that the defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of the defendant's business, vocation, or occupation; (3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered injury in fact to a legally protected interest; and (5) that the challenged practice caused the plaintiff's injury. *Hall v. Walter*, 969 P.2d 224, 235 (Colo. 1998).

An essential element of a CCPA claim is the existence of a deceptive trade practice that "significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property." *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.,* 62 P.3d 142, 147 (Colo. 2003). The relevant considerations in determining public impact are (1) the number of consumers directly affected by the challenged practice; (2) the relative sophistication and bargaining power of the consumers affected by the challenged practice; and (3) evidence that the challenged practice has previously impacted other consumers or has the significant potential to do so in the future. *Id.* at 149; *see also U.S. Welding, Inc. v. Burroughs Corp.*, 615 F.Supp. 554, 555 (D. Colo. 1985) ("[T]he [CCPA] is intended to reach practices of the type which affect consumers generally and is not available as an additional remedy to redress a purely private wrong.").

Plaintiff argues that the key deceptive practice alleged is that "BAC represented it would work with people to resolve their debt issues" and that, based on this representation, Plaintiff repeatedly tried to work with BAC to resolve his loans and disputes. Pl.'s Resp., ECF No. 87, at 12. However, Plaintiff asserts that BAC would not do so because of

pressure from shareholders and lack of staffing. Plaintiff also notes that since the advertisements were aired on television, the alleged facts support an inference that the deceptive practice had a significant public impact.

Under Colorado statute, deceptive trade practices include, *inter alia*, failing to "disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction." C.R.S. § 6-1-105 (u). This could conceivably include BAC's alleged conduct. Moreover, the Colorado Supreme Court instructs that the CCPA should be given a liberal construction consistent with its "broad remedial relief and deterrence purposes." *Hall*, 969 P.2d at 230. In light of the lenient standard on a motion to dismiss and the broad remedial purposes of the CCPA, I conclude that Plaintiff has alleged sufficient facts to allow this claim to go forward.

    4.    <u>Breach of Implied Duty of Good Faith and Fair Dealing</u>

Defendants appear to argue that this claim fails as asserted against BAC because there is no contract between Plaintiff and BAC.[3] In response, Plaintiff argues that Colorado law "has recognized that servicers acting on behalf of disclosed principals may be obligated to act in good faith towards the customer even though the servicer does not have a direct [contract] with the customer." Pl.'s Resp., ECF No. 87, at 15 (citing *Cary v. United of Omaha Life Ins. Co.*, 68 P.3d 462 (Colo. 2003)).

In *Cary*, the Colorado Supreme Court examined duties owed to insureds by a third

---

[3]There does not appear to be any dispute that as an assignee of the VA's loan and sales contracts with Plaintiff, Deutsche Bank has a contractual relationship with Plaintiff.

party claims administrator acting on behalf of an insurance company. In light of statutory and other obligations imposed on insurers to act in good faith, particularly in regards to settlement and claims adjudication, the Supreme Court held: "When a third-party administrator performs many of the tasks of an insurance company and bears some of the financial risk of loss for the claim, the administrator has a duty of good faith and fair dealing to the insured in the investigation and servicing of the insurance claim." *Cary*, 68 P.3d at 469. The court therefore found that even without contractual privity between the insured and the third party administrator, the plaintiff could proceed on a bad faith tort claim against the administrator.

*Cary* relies in large part on the particular relationship between an insurer and insured and extends a tort, not contract, theory generally limited to the insurance context. Nonetheless, many of the principles upon which the decision is based, including the fact that the third party administrators undertake many of the responsibilities of the insurer and have great discretion, may be applicable here. Therefore, while I do not opine at this point as to whether Colorado courts would extend the holding of *Cary* beyond the insurance relationship, I will permit Plaintiff's claim against BAC to proceed and will rule on the issue if and when adequate evidence and legal argument are presented.

    5.    <u>Liability of Deutsche Bank</u>

Finally Defendants argue that the claims against Deutsche Bank must be dismissed because the actions alleged were taken by BAC, not Deutsche Bank. Defendants contend that Plaintiff's respondeat superior argument fails because BAC and Deutsche Bank are separate entities and BAC is not an "employee" of Deutsche Bank. This argument is unavailing. Plaintiff has alleged that BAC acted as an agent on behalf of Deutsche Bank;

it is well established that a principal may be vicariously liable for the acts of its agent. *Grease Monkey Int'l, Inc. v. Montoya*, 904 P.2d 468, 473 (Colo. 1995).

Accordingly, it is ordered:

1. Defendants' Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 73) is denied.

DATED at Denver, Colorado, on March 29, 2011.

BY THE COURT:

s/ Walker D. Miller
United States Senior District Judge